NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-874                                          Appeals Court


        AURORA LOAN SERVICES, LLC  vs.  WALTER MURPHY.[1]


                       No. 13-P-874.

     Plymouth.    November 4, 2015. - December 11, 2015.

          Present:  Berry, Meade, & Maldonado, JJ.



Mortgage, Foreclosure, Real estate.  Real Property, Mortgage,
     Sale.  Sale, Real estate.  Notice, Foreclosure of mortgage.
     Practice, Civil, Retroactivity of judicial holding.
     Retroactivity of Judicial Holding.




     Summary process.  Complaint filed in the Southeast Division
of the Housing Court Department on February 6, 2012.

     The case was heard by Anne Kenney Chaplin, J., and a motion
for reconsideration was heard by her.


     Paul R. Collier, III, for the defendant.
     Shawn Michael Masterson for the plaintiff.


     MEADE, J.  Walter Murphy purchased his home in 2007 with a

mortgage loan from GreenPoint Mortgage Funding, Inc.

(GreenPoint).  In November of 2010, Murphy received a notice

─────────────────────
        [1] Also known as Walter W. Murphy.

from Aurora Loan Services, LLC (Aurora), notifying him that he had defaulted on his loan. The letter also informed him of his right to cure the default, or to assert the nonexistence of a default or any other defense to acceleration of the loan in a foreclosure proceeding. Acting as nominee for GreenPoint, the Mortgage Electronic Registrations Systems, Inc. (MERS), assigned the mortgage to Aurora on April 13, 2011. In October, 2011, Aurora foreclosed on and purchased the property in an extrajudicial foreclosure auction. Thereafter, Aurora commenced a summary process action to evict Murphy.

In Housing Court, the judge determined that Aurora, as mortgage servicer, adequately complied with the requirements under G. L. c. 244, § 35A, as mortgagee, and granted it summary process to recover possession of the premises. On appeal from the judgment, Murphy claims that, pursuant to the Supreme Judicial Court's (SJC) recent decision in Pinti v. Emigrant Mort. Co., 472 Mass. 226 (2015), Aurora's failure to strictly comply with the notice of foreclosure procedures contained in Murphy's mortgage renders the subsequent foreclosure void. Asserting that a ruling in his favor would not impair existing property interests and doing so would apply Pinti's otherwise prospective limitation equitably and without appearing arbitrary and capricious, Murphy claims the Pinti ruling ought to extend to cases pending on appeal (when the claim was raised and

preserved) at the time of the <u>Pinti</u> decision's release. We agree and therefore reverse.

1. <u>Background</u>. Murphy purchased 245 Holmes Street in Halifax on March 13, 2007, through a mortgage loan secured from GreenPoint in the principal amount of $230,000. The mortgage conveys a security interest in Murphy's home and explicitly sets out the rights, powers, and obligations of the parties. Under its terms, Murphy was the mortgagor (borrower), and GreenPoint was the mortgagee and lender, with MERS as nominee for its successors and assigns.

Paragraph 22 of the mortgage describes in bold print the terms of a power of sale -- including the circumstances in which Murphy's home could be foreclosed upon and sold at auction, the appropriate process for doing so, and the entity with the right to initiate and to conduct such a sale -- in the event that Murphy defaulted under the terms of the mortgage, thereby accelerating the loan:

> "22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a

default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law."

In a letter dated November 4, 2010, Aurora informed Murphy that his loan was "in default" and that it would accelerate the loan unless he remitted the overdue balance and cured the default by April 4, 2011.  In the letter, Aurora asserted that unless Murphy cured the default, it would take steps to terminate his ownership in a foreclosure proceeding.  The letter also notified Murphy of his right to assert the "non-existence of a default or any other defense" that he might have to acceleration of the loan and sale of his property.

Nothing in the record indicates that Murphy cured the default within the prescribed 150-day period.  After this period passed, MERS formally assigned the mortgage to Aurora on or about April 13, 2011.  On October 6, 2011, Aurora commenced foreclosure proceedings against Murphy and subsequently recorded a foreclosure deed through which Aurora purported to become the title owner of the property.  In a mailing dated December 16, 2011, Aurora sent Murphy a "notice to quit and vacate premises" informing him that his rights to occupy the property would terminate within seventy-two hours; Aurora then commenced a summary process action to evict him.

In the summary process proceeding, a judge of the Housing Court determined that Aurora established its case for possession of the premises, plus costs. Murphy had argued that Aurora failed to prove its superior right to possession of the premises because (1) it did not strictly comply with the "terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" as required by G. L. c. 183, § 21, (2) Aurora failed to comply with the provisions of G. L. c. 244, § 35A, because it was not the assignee of the mortgage when it sent Murphy notice of his right to cure, and (3) the notice of the right to cure itself did not comply with either § 35A or paragraph 22 of Murphy's mortgage.

The judge found no merit to Murphy's claims and ruled that "mortgagee" in relation to § 35A properly included Aurora as a "mortgage servicer." In addition, the judge held that there was "no dispute" whether Murphy received notice of his right to cure and that disputes regarding the notice's failure strictly to comply with paragraph 22 or § 35A were "not the types of claims that would render the foreclosure void ab initio." The judge further held that there was no express obligation strictly to comply with § 35A in defining the statutory power of sale.[2]

_____

[2] The SJC since has resolved this legal question in U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421, 430-431 (2014), which holds that § 35A is not one of the statutes relating to the foreclosure of mortgages by exercise of the power of sale

Murphy further contested the notice of his right to cure as inadequate in a motion for reconsideration.  He claimed that, because Massachusetts is a nonjudicial foreclosure State without a mandated "foreclosure proceeding," Aurora's failure to notify him that he would need affirmatively to bring a court action in order to assert a defense or the nonexistence of default deprived him of proper notice, and made the foreclosure sale void ab initio, not merely voidable.  In her order denying the motion, the judge held that, while providing such notice is a necessary condition precedent, the content of the notice is not. Relying on Superior Court decisions, Murphy claimed that other Massachusetts courts had found that parties must strictly comply with § 35A as a statute that is part of the power of sale under G. L. c. 183, § 21.  Because the SJC had not yet decided the relevant points governing this matter, the judge declined to follow the trend in the Superior Court and denied Murphy's motion for reconsideration.  Murphy timely noticed an appeal from the judgment and the order denying reconsideration.

---

under G. L. c. 183, § 21, because § 35A is designed to give a mortgagor a fair opportunity to cure a mortgage before the debt is accelerated and foreclosure proceedings begin.  Therefore, "a mere violation of § 35A" is insufficient to render a foreclosure proceeding void; the violation must be so "fundamentally unfair" as to entitle the mortgagor to equitable relief.  Schumacher, supra at 433 (Gants, J., concurring).  Because we reverse on alternate grounds, we need not consider here whether the notice under § 35A was fundamentally unfair.

2.  Discussion.  On review of a jury-waived proceeding, we accept the judge's findings of fact unless they are clearly erroneous.  See U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421, 427 (2014).  However, where the judge has not assessed witness credibility, but instead based her findings on documentary evidence, we may draw our own conclusions from the record.  Ibid.  We examine the judge's rulings on questions of law de novo.  Ibid.

On appeal, Murphy claims that Pinti, 472 Mass. at 231-244, which holds that the failure to comply strictly with the notice of default provisions in the mortgage renders the foreclosure sale void, not merely voidable, ought to apply to cases pending on appeal when that claim was raised and preserved.[3]  Applying the principles governing application of new doctrines to cases pending on appeal determined in Galiastro v. Mortgage Electronic Registration Sys., Inc., 467 Mass. 160, 165-170 (2014), we agree.

In Pinti, supra at 235-236, the SJC held that a notice of default provision (nearly identical to Murphy's) in paragraph 22

_____

[3] Murphy also claims that Aurora had no right to exercise authority as lender because it did not receive a written assignment of the mortgage for several months after it sent the notice of foreclosure and right to cure.  In support of his argument, Murphy claims that G. L. c. 183, § 21, confirms that only the original mortgage holder or holder of the written mortgage assignment may exercise the powers of foreclosure granted under a mortgage.  We need not reach the issue.

of the plaintiff's mortgage required strict compliance as a necessary component of the power of sale in the mortgage and the statutory power of sale in G. L. c. 183, § 21.  The court explained that the errant notice, which informed the defaulting mortgagors of their right to bring a court action, did not strictly comply with the provisions of paragraph 22 of the mortgage because the notice did not inform the mortgagors of their right and the need to initiate legal action to challenge the validity of the foreclosure, a necessary step in a nonjudicial foreclosure State like Massachusetts.  Pinti, supra at 237.  Therefore, because the notice failed to strictly comply with paragraph 22 of the mortgage, the court held the subsequent foreclosure sale was void, not voidable.  Id. at 238, 240-243.

Specifically, the court distinguished the requirements for strict compliance with paragraph 22, the focus of Pinti, from the less stringent notice requirements of § 35A.  Id. at 239-240.  The court previously had determined that "strict or exact compliance with all the provisions of § 35A was not a prerequisite of a valid foreclosure" because § 35A was designed to protect existing and new homeowners from foreclosure and loan acceleration by providing a grace period.  Id. at 239, citing Schumacher, 467 Mass. at 430-431.  Because of this distinct purpose, § 35A is not a foreclosure sale statute within the meaning of G. L. c. 183, § 21.  Pinti, supra at 239, citing

Schumacher, supra at 431. Pinti explains that the "terms of the mortgage" and a statute "relating to the foreclosure of mortgages by the exercise of a power of sale" under G. L. c. 183, § 21, should be understood to have separate requirements with independent meanings that include paragraph 22 as a term of the mortgage requiring strict or exact compliance, yet exclude § 35A as a statute not within the fixed set of foreclosure sale statutes. Pinti, supra at 239, citing Schumacher, supra at 430. As such, notice to cure a default must strictly comply with the terms of paragraph 22 of a mortgage in order to conduct a valid subsequent foreclosure proceeding.[4]

Citing a willingness to apply property law decisions prospectively and noting the impact the case otherwise could have on the validity of titles, the Pinti court applied the decision prospectively. Id. at 243. Specifically, the court stated that the case "will apply to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of

---

[4] Aurora also argues that compliance with § 35A satisfies the notice requirements of paragraph 22 and cites to paragraph 15 of Murphy's mortgage, which provides: "If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument." Because Aurora raises this claim for the first time on appeal, we decline to reach it. See Cariglia v. Bar Counsel, 442 Mass. 372, 379 (2004).

default required by paragraph 22 is sent after the date of [the Pinti] opinion." Ibid. However, the court specifically left open the question whether its decision should be applied to "any other class of cases pending on appeal." Id. at 243 n.25.

This case presents the opportunity to resolve that open question. Murphy claims that a failure to extend Pinti to this and other pending cases (where the issue has been raised and preserved) would unjustly deprive him of the benefit that the similarly situated Pinti mortgagors received. See Galiastro, 467 Mass. at 167-168. We agree.

This appeal was stayed after the SJC granted direct appellate review in Pinti on the same issue, i.e., whether paragraph 22 requires strict compliance. "Where multiple cases await appellate review on precisely the same question, it is inequitable for the case chosen as a vehicle to announce the court's holding to be singled out as the 'chance beneficiary' of an otherwise prospective rule." Ibid. Here, Murphy should not be "deprived of the benefit of . . . challenging the old rule," nor deterred from challenging existing precedent merely because the SJC selected Pinti, and not Murphy, to announce and to clarify the terms and statutes requiring strict compliance. Id. at 169, quoting from Powers v. Wilkinson, 399 Mass. 650, 664 (1987) (Abrams, J., concurring in part and dissenting in part). Applying Pinti to Murphy's appeal also comports with the SJC's

practice of extending prospective-only holdings to the parties that bring the issue before the court, as well as similar actions pending on appeal.[5] See Galiastro, supra at 170. See also Commonwealth v. Pring-Wilson, 448 Mass. 718, 736 (2007) (applying new rule of criminal law decided in prior case to different defendant on appeal, "even though we said in the decision that the new rule would apply prospectively"). This exception to the prospective-only rule for the party bringing the doctrinal case (Pinti) and the party on appeal specifically preserving and raising the issue (here, Murphy), helps to limit the unevenness and inequity that might otherwise follow a doctrinal change. See Galiastro, supra. We do not extend the Pinti rule to cases pending in the trial court as the SJC has already limited the new rule's application "to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after [July 17, 2015,] the date of [the Pinti] opinion." Pinti, 472 Mass. at 243.

---

[5] As in Galiastro, cases that were pending on appeal when Pinti was released included those cases in which the case was docketed in this court before July 17, 2015, and this court had not yet issued a decision in the case. See Galiastro, supra at 167 n.14. Cases where we had issued a decision, and the litigants have filed a petition for further appellate review, will also be considered pending on appeal for purposes of the retroactive reach of Pinti. Ibid.

Having decided that the requirement for strict compliance with paragraph 22 announced in <u>Pinti</u> applies, we hold that because the notice of default and the right to cure that Aurora sent Murphy did not inform him of his need to initiate a court action to assert his rights and defenses in a foreclosure proceeding in a nonjudicial foreclosure State like Massachusetts, Aurora did not strictly comply with paragraph 22, a term of Murphy's mortgage, as required under G. L. c. 183, § 21.  This failure to strictly comply with paragraph 22 therefore renders Aurora's foreclosure on the property void.

3.  <u>Conclusion</u>.  The motion for reconsideration should have been allowed.  The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

<u>So ordered</u>.